IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CANDICE LYNN SHAFFER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 22-628-SRF ) |
| KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) ) |

### MEMORANDUM OPINION[1]

Plaintiff Candice Lynn Shaffer ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) against the defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration (the "Commissioner"). (D.I. 1) Pending before the court are two motions: (1) Plaintiff's motion for summary judgment seeking judicial review of the Commissioner's final decision denying Plaintiff's claim for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–433, (D.I. 11); and (2) the Commissioner's motion for remand to the Social Security Administration for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g), (D.I. 13).[2] Plaintiff opposes the Commissioner's motion for remand for further proceedings and argues that the court should instead remand the case for a finding of disability and an award of benefits. (D.I. 15) For the reasons set forth below, the Commissioner's motion for remand is DENIED, and Plaintiff's motion for summary judgment is

---

[1] On August 2, 2022, the parties consented to the jurisdiction of the undersigned judicial officer to conduct all proceedings in this matter through final judgment, pursuant to 28 U.S.C. § 636(c). (D.I. 10)
[2] The briefing on the pending motion for remand is found at D.I. 14 and D.I. 15.

GRANTED insofar as Plaintiff seeks the entry of judgment under 42 U.S.C. § 405(g) reversing the Commissioner's final decision and ordering the payment of benefits.

I.  **BACKGROUND**

Plaintiff filed an application for DIB on April 30, 2014, alleging disability as of February 4, 2010. (D.I. 8 at 21) An ALJ held a hearing on April 25, 2017, and subsequently issued an unfavorable decision on June 22, 2017, finding that Plaintiff could perform a reduced range of light work even though she had severe impairments which included degenerative disc disease of the lumbar spine, degenerative joint disease, obesity, and thoracic outlet syndrome. (*Id.* at 21-27) After the Appeals Council denied her request for review, Plaintiff appealed the decision to this court. (*Id.* at 10-14)

On August 8, 2019, the court reversed the ALJ's decision and remanded the case for further administrative proceedings. (D.I. 8-1 at 590-627) In reaching this conclusion, the court found that the ALJ erred in his assessment of the medical opinion evidence by assigning little weight to the opinions of three treating physicians: Dr. Tuerff, Dr. Devotta, and Dr. Bose. (*Id.* at 620-25) The court determined that the treatment records the ALJ relied on to discount those opinions were not inconsistent with the medical opinions. (*Id.*) Because the treating physician opinions established greater limitations than those set forth in the ALJ's residual functional capacity ("RFC") determination, the court rejected that determination. (*Id.* at 626) The court further found that the ALJ erred in his finding that Plaintiff could perform light work based on the opinions of the state agency consultants because those consultants opined that Plaintiff could perform sedentary work. (*Id.* at 625)

On remand, another hearing was held and the ALJ again issued an unfavorable decision in April of 2020 based on a finding that Plaintiff could perform a reduced range of sedentary

2

work. (D.I. 8-1 at 457-71) After the Appeals Council denied Plaintiff's request for review, Plaintiff again appealed the decision to this court. The Commissioner filed an uncontested motion to remand the case for further consideration of the medical opinion evidence and Plaintiff's RFC, and to obtain supplemental testimony from a vocational expert. (D.I. 8-2 at 32-33) The court granted the uncontested motion to remand on March 18, 2021. (*Id.* at 28)

On August 15, 2021, the Appeals Council entered an order effectuating the remand, concluding that the ALJ had not complied with the court's 2019 order and setting forth specific instructions requiring the ALJ to further consider the medical opinion evidence, Plaintiff's RFC, and supplemental vocational evidence. (D.I. 8-2 at 40-42) The ALJ held a hearing in January of 2022 and denied Plaintiff's claim yet again in March of 2022, finding that Plaintiff could perform a reduced range of sedentary work at step 5 of the sequential analysis. (D.I. 8-1 at 1002-13)

For the third time, Plaintiff has appealed the ALJ's decision. (D.I. 1) For the second time, the Commissioner has responded to Plaintiff's motion for summary judgment with a motion for remand, conceding that the ALJ erred in considering Plaintiff's claim. (D.I. 14) The court must now decide whether to remand for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g), or whether a finding of disability and an order for payment of benefits is appropriate at this juncture.

## II.   STANDARD OF REVIEW

Section 405(g) defines the role of the court in reviewing Social Security disability determinations, providing that "[t]he court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42

U.S.C. § 405(g). "Oftentimes the remedy prescribed by the court is the relief sought . . . by the Commissioner: a remand for further proceedings. Such relief is specifically authorized by statute, and given the deference owed to administrative agency decisions, is often appropriate." *Diaz v. Berryhill*, 388 F. Supp. 3d 382, 390 (M.D. Pa. 2019). But the statute also provides that the court may direct the Commissioner to award benefits instead of remanding for further proceedings. *See Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 357-58 (3d Cir. 2008).

A decision regarding the proper form of relief under § 405(g) is within the discretion of the court. *See Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984). An order directing the agency to award benefits is appropriate only if two conditions are met: (1) "there has been an excessive delay in the litigation of the claim which is not attributable to the claimant;" and (2) "the administrative record of the case has been fully developed and substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Diaz*, 388 F. Supp. 3d at 391. If both conditions are met, "it is unreasonable for a court to give the ALJ another opportunity to consider new evidence concerning the disability because the administrative proceeding would result only in further delay in the receipt of benefits." *Podedworny*, 745 F.2d at 221-22.

Under the first prong of the analysis, "courts measure th[e] delay both in terms of the passage of years and by reference to whether there have been prior appeals and remands." *Diaz*, 388 F. Supp. 3d at 391. Generally, courts have found that administrative delays of five years or more in cases involving one or two prior remands constitute excessive delays warranting an award of benefits. *See id.* (citing *Brownawell*, 554 F.3d at 358 (awarding benefits in case involving eight-year delay and two prior remands); *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir.

2000) (awarding benefits in case involving ten-year delay and two appeals); *Podedworny*, 745 F.2d at 223 (awarding benefits after more than five years of proceedings and two appeals)).

The second prong is satisfied when the record is fully developed and substantial evidence on the record supports a conclusion that the claimant is disabled and entitled to benefits. *Diaz*, 388 F. Supp. 3d at 391-92 (citing *Gilliland v. Heckler*, 786 F.2d 178, 184 (3d Cir. 1986)). In circumstances where "the record before the agency does not support the agency action, [ ] the agency has not considered all relevant factors, or [ ] the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). However, an award of benefits is proper when an "extensive medical record, wrongly rejected by the ALJ, is substantial evidence" that a claimant is disabled, *Morales*, 225 F.3d at 320, or when treatment records and medical opinions over an extended period support a conclusion that the claimant cannot maintain a normal, regular work schedule, *Nance v. Barnhart*, 194 F. Supp. 2d 302, 322 (D. Del. 2002).

### III. DISCUSSION

#### A. Delay

The parties do not meaningfully dispute Plaintiff's satisfaction of the first condition regarding excessive delay which is not attributable to Plaintiff. Plaintiff's disability application was filed more than eight years ago and was subject to three hearings before an ALJ and three appeals to the district court. (D.I. 8 at 21-27; D.I. 8-1 at 457-71, 590-627, 1002-13; D.I. 8-2 at 40-42; D.I. 14) The delays are therefore excessive both in terms of the overall duration and the number of instances in which the court has been charged with remanding flawed ALJ decisions. *See Diaz*, 388 F. Supp. 3d at 393 ("[I]f we acceded to the Commissioner's suggestion and

remanded this case we would be setting the stage for an extraordinary, fourth administrative decision in this case."). The delays in this case are more pronounced than those deemed excessive by the Third Circuit in *Brownawell* and *Podedworny*. *See Brownawell*, 554 F.3d at 358 (awarding benefits in case involving eight-year delay and two prior remands); *Podedworny*, 745 F.2d at 223 (awarding benefits after more than five years of proceedings and two appeals). Therefore, the first condition supports a finding of disability and an award of benefits.

**B. Development of the Administrative Record**

The court must next determine whether substantial evidence dictates a finding that the claimant is disabled.[3] *See Podedworny*, 745 F.2d at 221-22. In performing this analysis, the court is mindful of the Commissioner's admonition that "the district courts have no fact-finding role in Social Security cases." *Grant v. Shalala*, 989 F.2d 1332, 1338 (3d Cir. 1993). Nonetheless, the Supreme Court has affirmed the court's "broad grant of authority" under § 405(g) to enter a judgment reversing the Commissioner's decision without remanding the case for a rehearing. *Smith v. Berryhill*, 139 S. Ct. 1765, 1779 (2019).

The Commissioner contends that remand for further proceedings is appropriate because the ALJ's articulation of the medical opinion evidence is unclear and does not permit meaningful judicial review, and the record contains competing medical opinion evidence. (D.I. 14 at 2-3) But, as in *Podedworny*, correction of certain defects in the ALJ's assessment of the medical opinion evidence is not enough in this case. 745 F.2d at 222. Instead, the record before the court establishes that the Commissioner's presentation of medical and vocational evidence is not sufficient to support a finding that Plaintiff is not disabled. *Id.*

---

[3] The parties do not appear to dispute the completeness of the administrative record. *See Podedworny*, 745 F.2d at 221-22.

Substantial evidence in the record before the court supports a conclusion that Plaintiff cannot perform sedentary work. Plaintiff seeks benefits for the time between her alleged disability onset date on February 4, 2010, and her date last insured, which was December 31, 2014. (D.I. 8 at 21) The evidence of record, including most of the opinions by Plaintiff's treating specialists which have been the focal point of multiple remands, falls within this time period. Because this evidence has been fully developed and will not change, the court concludes that a fourth attempt by the ALJ to assess the evidence is not a worthwhile use of resources. *See Podedworny*, 745 F.2d at 222.

Plaintiff's medical treatment notes from February 4, 2010 through December 31, 2014 support a conclusion that Plaintiff is disabled and entitled to benefits. Plaintiff underwent a first rib resection, scalenectomy, and neurolysis to treat her thoracic outlet syndrome in February of 2010. (D.I. 8-1 at 256-58) Although the surgery eliminated her back and upper chest pain, she experienced pain, tingling, and numbness from her shoulder to her hand. (*Id.*) Her surgeon confirmed in follow up treatment notes that Plaintiff would be unable to return to work due to her continuing post-operative neurologic symptoms in her left arm, as well as her inability to use her right arm. (*Id.* at 260-62) On physical examination for her neck and shoulder pain in July of 2010, Plaintiff showed significant weakness in her rhomboid strength of the left shoulder, and the range of motion in her neck was impaired to about 60%. (*Id.* at 863-65) Trigger point injections were not successful in reducing her pain. (*Id.* at 866)

Plaintiff also received a series of lumbar epidural injections in 2012 to treat back pain which radiated down her right leg, but she continued to experience low back and mid thoracic pain. (*Id.* at 119-20) She underwent a provocative lumbar discography on December 10, 2012, which revealed a grade IV tear at the L3 and L4 spinal segments, followed by a lumbar fusion

procedure on April 23, 2013. (*Id.* at 121-25) Her pain levels in the months following surgery were between six and eight on a scale of ten, and she continued to experience lower back pain radiating across her lower limbs. (*Id.* at 125-27) Physical therapy notes after her lumbar surgery indicate that she could walk for an hour and sit for thirty minutes at a time. (D.I. 8 at 589) Plaintiff also received injections in her sacroiliac joint in November of 2013, but the injections provided no relief. (D.I. 8-1 at 130-31) An MRI in April of 2014 revealed postoperative fibrosis and narrowing at the L3 and L4 discs. (D.I. 8 at 797)

Plaintiff also sought treatment for knee and hip pain beginning in 2010. Treatment notes from orthopedist Bruce Katz, M.D., confirm that Plaintiff received injections in both knees in November of 2010 and discussed distal realignment surgery. (D.I. 8 at 356) Plaintiff also saw orthopedist Alex Bodenstab, M.D. for treatment of her right hip and groin pain. (*Id.* at 360) Dr. Bodenstab described her symptoms as "fairly dramatic" and recommended a hip arthroscopy. (*Id.*) On May 31, 2011, Dr. Bodenstab performed a right hip arthroscopic resection of a torn labrum. (*Id.* at 364-65) Following the surgery, Plaintiff continued to report pain and groin cramping, although she demonstrated increased tolerance for walking. (*Id.* at 366-67) In July of 2011, Dr. Bodenstab described Plaintiff's hip issues as "the least of her issues right now" and noted that she was under consideration for a patellar realignment to treat damage to the cartilage in her knee. (*Id.* at 369) Physical therapy notes from 2014 confirm that Plaintiff continued to experience groin pain at a level that prevented her physical therapist from initiating strength training. (D.I. 8-1 at 20) Her pain was exacerbated by lifting, pushing, and pulling. (*Id.*)

On October 27, 2011, Plaintiff underwent surgery to treat her moderate to severe plantar fasciitis and a moderate heel spur which demonstrated bone marrow edema. (D.I. 8-1 at 375,

8

387-88) Despite initial improvement post-surgery, Plaintiff's pain returned throughout her entire foot, limiting her to walking no more than one hour per day with pain. (*Id.* at 398, 416-17)

The treating specialists who performed Plaintiff's surgeries and treated her pain provided medical opinions that uniformly described severe, work-preclusive limitations. *See* SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996) (explaining that an individual's ability to do sustained work-related activities on a "regular and continuing basis" means 8 hours a day, for 5 days a week). Dr. Devotta, a pain management specialist, opined in May of 2014 that Plaintiff could stand or walk no more than two hours and sit no more than four hours in an eight-hour workday, with one or two unscheduled breaks lasting fifteen to twenty minutes and two or three absences per month. (D.I. 8 at 823) Dr. Devotta issued another opinion on June 10, 2015, a few months after Plaintiff's date last insured. (D.I. 8-1 at 845-48) In this assessment, Dr. Devotta reiterated that Plaintiff could stand or walk less than two hours less than two hours in an eight-hour workday and could remain at a workstation for two to three hours total in a standard workday, with one or two unscheduled breaks per day and three absences per month due to her pain and other symptoms. (*Id.*)

Dr. Bose, Plaintiff's orthopedic surgeon, similarly opined in March of 2014 that Plaintiff could sit for two hours in an eight-hour workday and stand, walk, and drive for one hour each in an eight-hour workday. (D.I. 8 at 818) In a 2017 opinion, Dr. Bose maintained his opinion that Plaintiff had a maximum tolerance of sitting for two hours and standing, walking, or driving for one hour in an eight-hour workday. (D.I. 8-1 at 448) And Dr. Tuerff, a vascular surgeon, opined in October of 2010 that Plaintiff would need to lie down for about two hours per workday and take four to five unscheduled breaks. (*Id.* at 312-14) These limitations are work preclusive according to the vocational expert, who testified that frequent unscheduled breaks and more than

9

one absence a month would not be tolerated in an employment setting. (D.I. 8-1 at 523, 1065) Taking into consideration the vocational expert's testimony, as well as Plaintiff's medical opinions and treatment records, there is substantial evidence to support Plaintiff's inability to work full-time.

The ALJ's failure to articulate a sufficient basis for rejecting the medical opinions of Plaintiff's treating physicians, despite multiple remands with explicit instructions on how to remedy the deficiencies, further supports an award of benefits at this stage. *See Pearson v. Saul*, 2020 WL 1865715, at *13 (M.D. Pa. Apr. 14, 2020). The court's prior remands in this case have largely been based on errors in the ALJ's assessment of opinions from Plaintiff's treating physicians, Drs. Tuerff, Devotta, and Bose, which in turn impact the adequacy of the RFC assessment. (D.I. 8-1 at 620-25); *see Zirnsak v. Colvin*, 777 F.3d 607, 614 (3d Cir. 2014) (explaining that hypothetical posed to vocational expert must accurately portray credibly established limitations). In 2019, the court determined that the medical opinions of Drs. Devotta and Bose describing Plaintiff's significant functional limitations were supported by objective medical evidence, and the ALJ had not adequately discussed the factors set forth in 20 C.F.R. § 404.1527(c) in connection with the medical opinions of Drs. Tuerff, Devotta, and Bose. (D.I. 8-1 at 620-25)

The ALJ has admittedly not been able to remedy these deficiencies in the 2020 and 2022 opinions. (D.I. 8-1 at 468-69, 1010-11; D.I. 8-2 at 32-33; D.I. 14) In 2021, the Commissioner conceded that another remand for further consideration of the opinion evidence and Plaintiff's RFC was appropriate, and the Appeals Council set forth specific instructions requiring the ALJ to further consider the medical opinion evidence, Plaintiff's RFC, and supplemental vocational evidence. (D.I. 8-2 at 32-33, 40-42) Nonetheless, the Commissioner now admits that the ALJ's

10

March 2022 decision was again deficient in the assessment of the treating physician opinions. (D.I. 14) In that decision, the ALJ afforded no weight to the opinions of Dr. Bose, Dr. Tuerff, or Dr. Devotta because the restrictive postural limitations set forth in those opinions were inconsistent with the overall record—essentially the same conclusion that was rejected by the court in the first appeal back in 2019. (D.I. 8-1 at 1010-11)

The Commissioner argues that remand for further proceedings is appropriate because the record contains competing opinion evidence from a state agency medical expert who challenged the extent of the limitations imposed by Plaintiff's treating physicians and opined Plaintiff could stand or walk for four hours and sit for six hours in a normal workday. (D.I. 14 at 3; D.I. 8 at 91) But the court's 2019 decision explained that the opinions of Drs. Bose and Devotta were consistent with objective medical evidence in the record and noted that the opinions of state agency consultants contradicting the treating physicians' opinions could not properly be credited in the absence of an adequate explanation of the ALJ's reasons for doing so. (D.I. 8-1 at 622-25); *See Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001). The ALJ was given two more opportunities to provide such an explanation, and it is undisputed that the ALJ failed to do so on both occasions. (D.I. 8-1 at 468-69, 1010-11; D.I. 8-2 at 32-33; D.I. 14) This supports a conclusion that there is no sufficient basis in the overall record to reject the limitations consistently articulated in the treating physicians' opinions. After three decisions by the ALJ and two failed attempts to repair the record, "it is unreasonable . . . to give the ALJ another opportunity to consider new evidence concerning the disability because the administrative proceeding would result only in further delay to the receipt of benefits." *Podedworny*, 745 F.2d at 222; *see also Smith*, 139 S. Ct. at 1779.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's motion for remand is DENIED (D.I. 13), and Plaintiff's motion for summary judgment is GRANTED insofar as it seeks judgment under 42 U.S.C. § 405(g) reversing the Commissioner's final decision and ordering the payment of benefits. An Order consistent with this Memorandum Opinion shall issue.

Dated: April 17, 2023

Sherry R. Fallon
United States Magistrate Judge